IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Willie Simpkins, #283398, | ) |
| Petitioner, | ) Civil Action No. 6:07-1552-HMH-WMC |
| | ) |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| | ) |
| Elaine Robinson, Warden of | ) |
| Stevenson Correctional Institution, | ) |
| | ) |
| Respondent. | ) |

The petitioner, a state prisoner proceeding with the assistance of counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND OF THE CASE**

The record reveals that the petitioner is currently confined in the South Carolina Department of Corrections pursuant to orders of commitment of the Lexington County Clerk of Court.  On February 4, 2002, the petitioner pleaded guilty before the Honorable James R. Barber, III, to leaving the scene of an accident resulting in death and obstruction of justice (2000-GS-32-3793 & 3792).  He was represented by attorney Michael Ray Ellisor.  In exchange for the petitioner's guilty plea, the State agreed to dismiss a charge of felony driving under the influence ("DUI") death arising from the same incident and to recommend concurrent sentences.  Additionally, as a result of the plea, the State

announced its intention to dismiss two related charges against the petitioner's son.[1] Sentencing was deferred, primarily to enable the victim's family to be present.[2]   The petitioner's sentencing hearing occurred on April 15, 2002.

The following factual recitation was offered to the plea court by the Deputy Solicitor.  On April 11, 2000, at approximately 6:20 a.m., Jerry Lawrence walked from the hotel where he was staying to a convenience store to buy a newspaper.  On the way back to his hotel, at approximately 6:30 or 6:35 a.m., he was struck by the petitioner's vehicle. The accident occurred near the intersection of Bush River Road and I-20.  Prior to the accident, two eyewitnesses in the area of the accident saw the petitioner's dark colored Mercedes go by at a high rate of speed.   The M.A.I.T. accident reconstruction team responded to the scene and it was determined the petitioner was driving at a minimum of 55 miles per hour in a 40 mile per hour zone at the time of the collision.[3]  The petitioner left a total of 58 feet of skid marks.  Mr. Lawrence's head and upper body penetrated the car's windshield and his head hit the windshield so hard the petitioner's hand was broken.  The impact was such that the victim's glasses were knocked off his face and both shoes were knocked of his feet.  The victim's neck, back and leg were broken.  Mr. Lawrence's death was "pretty much instantaneous."  The victim was carried 92 feet on the hood of the petitioner's car.  Physical evidence established the victim's body slid off the hood of the petitioner's car and fell onto the road.  The body then slid an additional 64 feet down the roadway before coming to a stop.  Witnesses saw the petitioner's vehicle come to a near stop, drive around Mr. Lawrence's body, and speed away.  A few minutes later, another

---

[1]The petitioner's son was charged in the coverup of the crime and attempt to hide evidence.

[2]The victim was not from South Carolina, but was visiting South Carolina on a golf outing with friends.

[3]The petitioner operated a "bar and grill" in the Columbia, SC, area and was on his way home from closing the club at the time of the incident.

witness observed the petitioner's vehicle.  The vehicle was being operated erratically and recklessly and had a cracked windshield.  This witness saw the vehicle pull into a particular location on Avery Lane.  The witness saw the petitioner "pull the vehicle not only into the house [not striking the house] and into the driveway but around behind the house and inside a fence along the back side, parked right up against the back wall of the house."

The petitioner's son took him to the hospital at 9:00 in the morning for his hand to be treated.  The nurses at the hospital described the petitioner "as being under the influence of alcohol, combative, irritable and not very pleasant to be around.  [Petitioner] told [the nurses] that the last drink he had was at 6:00 a.m., which was 30 minutes prior to this accident taking place."  The petitioner told the doctors and nurses that he hurt his hand when he punched a mirror during an argument with his wife.  The petitioner was transferred from Lexington Medical Center to Baptist Hospital.  According to the notes of Dr. Holmes at Baptist Hospital, the petitioner's speech was slurred and he seemed intoxicated.

The witness who saw the petitioner hiding his car behind his house did not call law enforcement immediately.  When the witness got home from work, he told his wife about what he had seen.  She told him she had seen a story on the news about a hit and run that had happened at about 6:30 a.m. on Bush River Road.  Putting two-and-two together, the witness called the Highway Patrol.  The Highway Patrol maintained surveillance on the petitioner's house until they could obtain a search warrant for the car. As they waited, the petitioner drove up with his son in an SUV with a U-Haul car dolly in tow. The petitioner told the officers that he was going to haul a car away.[4]  He told them that he had hit a signpost on I-20 with the vehicle.  The petitioner finally admitted to the officers that he had been involved with the collision that killed Mr. Lawrence.  The petitioner said he

---

[4]The petitioner's son was charged with conspiracy and obstruction of justice.

3

thought he hit a deer.  The Highway Patrol took some tissue samples from the roof of the automobile.  DNA testing showed that the tissue came from Mr. Lawrence (App. 23-33).

In addition to information regarding the crimes to which the petitioner was pleading guilty, the Deputy Solicitor offered information to the plea court about the petitioner's prior conviction for grand larceny and his surrender of his Georgia bar license after a complaint was filed by a client (App. 20, 34-35).[5]  The plea court also received information, including some at its own inquiry, that the collision may have been alcohol-related, information which the petitioner and plea counsel disputed (App. 17, 29-30, 33-34, 47, 51-52, 60-61). Before sentencing the petitioner, the plea court commented that "I don't know whether he had been drinking or not, but there is at least some inference that you had, some circumstantial evidence that you may have.  Whether you were under the influence or not, I mean, you may have had something to drink.  It's not against the law to drink and drive, it's just against the law to be impaired when you drive" (App. 61).  The plea court found there was evidence the petitioner had been drinking before the hit-and-run, but never found that the petitioner's ability to drive was materially and appreciably impaired at the time of the hit-and-run.  At the conclusion of the hearing, Judge Barber sentenced the petitioner to 15 years imprisonment for leaving the scene of an accident resulting in death and a concurrent five years imprisonment for obstruction of justice (App. 65).  The maximum sentence allowable by law at the time of the petitioner's plea was 25 years for leaving the scene of an accident with death and 10 years for obstruction of justice.

The petitioner filed a direct appeal challenging his sentence, but the South Carolina Court of Appeals affirmed.  *State v. Simpkins*, Op. No. 2003-UP-454 (S.C. Ct. App. filed July 2, 2003).

---

[5]In addition to once being a practicing attorney, the petitioner was a former public defender in the State of Georgia.  After the complaint was filed, the petitioner surrendered his license and admitted to conduct amounting to fraud and deceit. (See attached Petition for Voluntary Surrender of License).

The petitioner then filed an application for post-conviction relief on August 1, 2003. The respondent made its return on March 31, 2004. An evidentiary hearing into the matter was convened on October 11, 2004 before the Honorable Alison R. Lee, Circuit Judge. The petitioner was present at the hearing and was represented by attorneys Mario A. Pacella and J. Preston Strom, Jr. The respondent was represented by Lakesha W. Jeffries of the South Carolina Attorney General's Office.

In his PCR application, the petitioner claimed his guilty plea was involuntary as a result of ineffective assistance of counsel in that counsel:

> (1)    failed to object to improper evidence submitted at the sentencing hearing – "namely statements by law enforcement the accident may have been alcohol related, information [Petitioner] was disbarred by the state of Georgia, and information [Petitioner] stole money from a client while he was a practicing attorney;"
>
> (2)    failed to advise Petitioner that information regarding his dismissed charges and past history related to the surrender of his bar license may be relevant at sentencing; and
>
> (3)    failed to prepare for the sentencing hearing and present evidence to rebut the State's allegations regarding alcohol use related to the collision, allegations regarding his Georgia Bar license, and allegations he stole money from a client while a practicing attorney.

At the PCR hearing, the petitioner testified on his own behalf. He testified that he did not have any alcohol until after the accident. He testified that when he arrived home after the accident, he called his son to take him to the hospital because of the injury to his hand. While he waited for his son, he drank alcohol because of the pain in his hand (App. 117). The petitioner's plea counsel, Mr. Ellisor, also testified. The PCR court also had before it a copy of the guilty plea and sentencing transcripts, the records of the Lexington County Clerk of Court, and the petitioner's records from the South Carolina Department of Corrections.

5

By order dated May 4, 2005, Judge Lee denied and dismissed the petitioner's application for PCR with prejudice (App. 172-77). Initially, the court noted that prior to the petitioner's sentencing a pre-sentence report was ordered by the sentencing court. The court also noted that in his application, the petitioner claimed that his counsel was ineffective for failing to object to improper evidence submitted at sentencing. In particular, the petitioner claimed his attorney failed to prepare for the sentencing hearing by not presenting evidence to rebut the State's claim that there was alcohol involved in the accident and that the petitioner had been disbarred in Georgia for stealing from his client. Further, the petitioner claimed his attorney failed to advise him that these matters could be brought out during sentencing. The petitioner stated that if he had been aware of these things then he would have exercised his right to proceed to trial.

The PCR court pointed out that in post-conviction relief actions, the applicant has the burden of proving the allegations in the application. Rule 71.1(e) SCRCP; *Butler v. State*, 334 S.E.2d 813 (S.C. 1985). The PCR court also stated that where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668 (1984); *Butler,* 334 S.E.2d 813. The court also noted that the proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement. *Butler,* 334 S.E.2d 813. The court also pointed out that the applicant must overcome this presumption to receive relief. *Cherry v. State*, 386 S.E.2d 624 (S.C. 1989).

The court relied on *Strickland*'s two-pronged test in evaluating the allegations of ineffective assistance of counsel. Judge Lee noted that first the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is

6

measured by its "reasonableness under professional norms." *Cherry*, 385 S.E.2d at 625 (citing *Strickland*, 466 U.S. 668). Second, the court held counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cherry*, 386 S.E.2d at 625. The court held with respect to a guilty plea counsel, the applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial (App. 173) (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)).

The PCR court pointed out that in a sentencing proceeding, such as was challenged here, evidentiary rules are inapplicable (App. 174) (citing *Williams v. New York*, 337 U.S. 241(1949)(a sentencing judge need not follow the rules of evidence when determining the appropriate punishment for a convicted defendant); *State v. Franklin*, 226 S.E.2d 896 (S.C. 1976); *State v. Cantrell*, 158 S.E.2d 189 (S.C. 1967)(when sentencing a convicted defendant, a trial court exercises a wide discretion regarding the sources and types of evidence it may use to assist it in determining the kind and extent of punishment imposed)). The PCR court also pointed out that Rule 1101(d)(3), SCRE, provides these evidentiary rules do not apply in sentencing proceedings, except in the penalty phase of a capital case. However, the court noted the admissibility of evidence is limited by constitutional provisions which require the evidence to be relevant, reliable, and trustworthy (App. 174).

The petitioner claimed counsel was not prepared to rebut the evidence presented at the sentencing hearing. The PCR court noted again that the transcript reflects that a pre-sentence report was prepared for the court for use at the hearing. Prior to the hearing, the Probation Office indicated it did not object to counsel looking at the report so long as the court permitted it. The sentencing court then provided counsel with an opportunity to review the pre-sentence report. The PCR court found that the statements

in the transcript were consistent with counsel's testimony that he did not get a chance to review the report before the hearing and when given an opportunity he briefly went over the report. The court further noted that the petitioner testified he was familiar with pre-sentence reports based upon his prior experience as a public defender in Georgia. The court pointed out that the pre-sentence report is not evidence and is not required to be shared with counsel (App. 174) (citing *State v. Gulledge*, 487 S.E.2d 590, 594 (S.C. 1997)).

The petitioner also argued that his plea counsel failed to object to improper evidence being presented at the sentencing hearing, particularly statements by law enforcement that the accident may have been alcohol related, information the petitioner was disbarred by the State of Georgia, and information the petitioner stole money from a client while a practicing attorney.

The PCR court found that during a recitation of the facts, the State made no mention of alcohol. The PCR court pointed out it was the trial court that specifically asked if alcohol was involved. The solicitor stated the evidence it would have introduced at trial; specifically, that the nurse at the hospital where the petitioner was treated would have testified the petitioner told them the last time he had a drink was 6:00 a.m. (approximately 30 minutes before the accident occurred). Dr. Wendell Holmes, who treated the petitioner, noted the petitioner's speech was slurred and he seemed intoxicated but he was able to answer questions. Further, the pre-sentence report contained an interview with Corporal Day, who was present at the sentencing. The PCR court pointed out that the sentencing court specifically asked Corporal Day the following:

> The Court:   Do you have any information that somebody saw him drunk?
>
> Corporal Day:   NO sir.
>
> The Court:   Drinking?

8

> Corporal Day:    No Sir. The statements in which he gave the nurse.
>
> The Court:  The [sic] he hadn't had anything to drink since six o'clock in the morning?
>
> Corporal Day:   The last alcohol drink he had at six o'clock that morning.  That's based on that information and the fact that he left the scene, which is typical, a normal situation for someone whose [sic] drinking.

The PCR court pointed out that although counsel did not object at the time the solicitor made his statements or during the discussion with Corporal Day, during mitigation both the petitioner and his attorney had the opportunity to correct any misinformation. Specifically, petitioner's counsel stated:

> He had been at his place of business [before the accident]. This is a place that doesn't sell alcoholic beverages, but he had been there overnight, and he left. He went to sleep. He was going down the road and he went to sleep, hit a man in the road and panicked.

The petitioner stated to the sentencing judge as follows:

> I'm sorry by what I did, but I wasn't drinking, Your Honor, But what happened, when I got home I did. I mean I was just shaking like a leaf on a tree...I went in the house and... I did drink. Once I got home, I keep liquor at my house, as most people do, and I drank. I don't know how long it took for my son to get there...so by the time we got to the hospital I don't remember, to be honest with you. I do not. I was in pain and I drank.

The PCR court found that the petitioner and his attorney had the opportunity to correct any misstatements and the sentencing court had information for it to consider in determining what sentence to impose and to determine what if any role alcohol may have contributed to the incident.  The PCR court specifically pointed out the sentencing court stated as follows:

> I don't know whether he had been drinking or not, but there is at least some inference that you had, some circumstantial evidence that you may have. Whether you were under the

9

> influence or not... you may have had something to drink. It's not against the law to drink and drive, its just against the law to be impaired when you drive.

The PCR court held counsel was not ineffective for failing to object to the statements made by the Assistant Solicitor and Corporal Day.

The petitioner also objected about the misrepresentation regarding his license to practice law in Georgia. The PCR court noted that at the sentencing hearing the assistant solicitor informed the court that the petitioner's license to practice law in Georgia was suspended. The factual background given was that before the filing of a formal complaint, the petitioner voluntarily surrendered his license admitting to a number of ethical violations. These violations included lying to his client about filing a complaint and about settlement negotiations. The petitioner was alleged to have forged the client's name on the settlement check and converted the money to his own use. The petitioner argued that since he voluntarily surrendered his license, statements that he was suspended or disbarred should not have been presented to the court. The PCR court found that the petitioner's attorney did not object because it was character evidence that the court could consider and it was contained in the pre-sentence report. The court also found that since the pre-sentence report does not have to be shared with the defendant or his counsel and is for the court's benefit, counsel was not ineffective for failing to object to this information. The petitioner's application for post-conviction relief was denied. Judge Lee's order denying relief was issued on May 4, 2005, and the petitioner did not file a Rule 59(e) motion to alter or amend the judgment.

The petitioner filed a petition for writ of certiorari dated October 21, 2005. He presented the following issues:

> a. The lower court erred in concluding Petitioner's attorney did not render ineffective assistance of counsel where Petitioner's attorney failed to advise petitioner that the trial court would consider unsubstantiated, non-evidentiary allegations of alcohol

10

use to calculate Petitioner's sentence for Leaving the Scene of an Accident, Death Involved, where Petitioner testified that he would have insisted on a trial if he had been advised the Court would consider such unsubstantiated allegations.

b.  The lower court erred in concluding Petitioner's attorney did not render ineffective assistance of counsel where Petitioner's attorney did not insist the sentencing hearing be conducted in a manner where Petitioner's attorney could cross-examine unsworn statements made by Government witnesses and where Petitioner's attorney did not present any witnesses to rebut these statements.

The respondent filed its return on February 21, 2006.  The Supreme Court denied certiorari on January 4, 2007.  The remittitur was filed January 23, 2007.

In his petition now before this court, the petitioner makes the following allegations:

**Ground One**: Petitioner's attorney rendered ineffective assistance of counsel where he failed to advise petitioner that the trial court would consider unsubstantiated, non-evidentiary allegations of alcohol use to calculate his sentence, where Petitioner would have insisted on a trial if he had been properly advised.

**Supporting facts**: Petitioner testified that it was his understanding that since the Felony DUI charges were dropped there would be no mention of alcohol. He tried to get his attorney to object to references of alcohol used at the sentencing because he believed that was part of the plea bargain. His attorney had failed to advise him that information regarding his dismissed charges and his past history related to surrendering his bar license may be relevant at sentencing. Petitioner spoke with his attorney for only 15 seconds between his guilty plea and sentencing. His attorney did not object to the court's inquiry at the guilty plea, did not object to the inquiry at sentencing, did not demand the state's witnesses be placed under oath, did not prepare to rebut the state's information regarding alcohol at sentencing through lay and expert testimony. Petitioner testified that if he had known that his sentencing would have been conducted with unsworn statements he would have withdrawn his guilty plea prior to sentencing.

11

**Ground Two**: Petitioner's attorney rendered ineffective assistance of counsel where attorney did not insist the sentencing hearing be conducted in a manner where he could cross-examine unsworn statements made by Government witnesses and where Petitioner's attorney did not present any witnesses to rebut the statements.

**Supporting Facts**: Petitioner repeatedly denied that he had anything to drink prior to the accident, and there not sufficient evidence to establish that Petitioner had alcohol prior to the accident. However, Petitioner's attorney conceded that he should have requested an evidentiary hearing in light of the serious dispute regarding whether alcohol was involved. At the Plea Bargain and Sentencing hearing, statements were made by the prosecutor, judge, and investigating officer that Petitioner used alcohol prior to the accident and that Petitioner was disbarred. Petitioner's attorney did not object to any of statements, did not insist that the hearing be conducted in a manner where he could cross-examine unsworn statements or present any witnesses to rebut the statements.

On November 2, 2007, the respondent filed a motion for summary judgment. The petitioner filed his opposition to the motion on January 25, 2008, and the respondent filed a reply on February 4, 2008.

## PROCEDURAL BAR

In his memorandum in support of his habeas petition before this court, the petitioner alleges a new issue that was not raised in his state PCR action or even in this petition. In the memorandum, the petitioner alleges he was entitled to a *jury* determination of the evidence of intoxication because he was sentenced to 15 years when the state sentencing guidelines recommended 9-12 years (pet. habeas mem. 14-16). The petitioner relies upon *U.S. v. Booker*, 543 U.S. 220 (2005), and *Blakely v. Washington*, 542 U.S. 296 (2004). The respondent argues that this issue is procedurally barred. This court agrees.

If a petitioner before a federal district court fails to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has

12

procedurally bypassed his opportunity for relief in state courts.  In such a case, a federal district court is barred from considering the habeas claim absent a showing of cause and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice, as the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A petitioner may establish a fundamental miscarriage of justice by showing that a constitutional error probably resulted in the conviction of one who is actually innocent.  In order to raise a claim of actual innocence, a prisoner "must present evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

The petitioner cannot show cause and prejudice.  He was represented by counsel at the PCR hearing, and together they chose not to raise this issue and to have it ruled upon in the court's order by a Rule 59(e) motion.  The petitioner cannot show actual innocence because the evidence against him, which is described above, is overwhelming. Accordingly, this issue is procedurally barred.

The respondent also argues that grounds one and two are procedurally barred.  However, the petitioner raised both claims in his state PCR and in his petition for writ of certiorari.  Accordingly, the court will consider these issues on the merits.

### STANDARD OF REVIEW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

13

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA de novo standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

14

With regard to ground one, the petitioner argues that while this claim was presented to the state PCR court and challenged in the petition for writ of certiorari, the PCR court failed to address the core allegation that the petitioner's attorney failed to advise him that the trial court would consider unsubstantiated, non-evidentiary allegations of alcohol use to calculate his sentence (pet. opp. m.s.j. 3). The PCR court found that the petitioner's trial counsel did not render ineffective assistance of counsel. However, the petitioner contends that since the PCR court made no findings of fact necessary for its conclusion with regard to his claim that his plea counsel failed to advise him that these matters could be brought out during sentencing, including a credibility determination of the petitioner and his plea counsel, this court cannot review the findings under the deferential standard of review described above. This court agrees. Accordingly, the court will review this claim of error *de novo*. With regard to ground two, the issue was raised to and ruled upon by the PCR court. Accordingly, the deferential standard of review in section 2254(d) applies.

## ANALYSIS

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an

15

ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.  Review of counsel's performance is "highly deferential." *Id.* at 689.  With respect to guilty plea counsel, a petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 59  (1985).

### Ground One

        In his first ground for relief, the petitioner contends that his plea counsel was ineffective for failing to advise him that the plea court would consider allegations of alcohol use in sentencing him.  Even under a *de novo* review, the petition cannot show prejudice. Accordingly, this ground fails.

        As noted by the respondent, the petitioner is a former attorney, and he worked as a public defender in Georgia (App. 62).  The petitioner should have been well aware that a sentencing court can consider the facts and circumstances surrounding an accident, including alcohol use, in fashioning a sentence for leaving the scene of an accident with death and obstruction of justice.  The petitioner concedes in his memorandum in support of his habeas petition that alcohol impairment was relevant to sentencing on the charge of leaving the scene of an accident involving death (pet. habeas mem. 11).  The petitioner's attorney also testified at the PCR hearing that the petitioner told him of his bar suspension prior to the plea, and he informed the petitioner the facts surrounding the suspension could be considered by the court in passing sentence (App. 135-36).  *See State v. Gulledge*, 487 S.E.2d 590, 594 (S.C. 1997) (noting the broad scope of the circuit court's inquiry regarding issues relevant to imposing a sentence, but noting that constitutional provisions require the evidence to be relevant, reliable and trustworthy.").  Such information was certainly relevant and reliable.  *See Hayden v. State*, 322 S.E.2d 14, 15 (S.C. 1984)(at sentencing a judge has an obligation to consider information material to punishment); *State v. Franklin*, 226

S.E.2d 896, 897 (S.C. 1976) ("If justice is to be done, a sentencing judge should know all material facts.").

At his PCR hearing, the petitioner testified his primary concern was getting the felony DUI charge dropped and that he was willing to plead to leaving the scene of an accident resulting in death because he was guilty of that offense (App.120). The evidence of his guilt on the charges was overwhelming. The petitioner admitted to police the day of the collision that he was the driver of the car that hit the victim. Eyewitnesses saw a car fitting the description of the petitioner's car strike the victim, killing him, and then leave the scene of the accident (Tr. 24, 27). The victim remained on the hood of the vehicle for 92 feet before sliding off and hitting the road (Tr. 26). The eyewitnesses saw the car slow down, drive around the body, and depart at a high rate of speed (Tr. 27). The highway patrol determined the petitioner's speed at the time of impact as 55 miles per hour in a 40 mile per hour zone. An eyewitness saw the petitioner hide the vehicle behind his house (App. 28). The police caught the petitioner trying to get rid of the car (App. 31-32). The petitioner freely admitted his guilt to the two indictments before the plea court. Further, the petitioner admitted to the PCR court that he was guilty of the crimes to which he pleaded guilty (App. 125).

As argued by the respondent, given the record in this case, the petitioner's claim that he would not have pleaded guilty if he had been advised that the facts surrounding the accident and his character would be in issue at sentencing is simply not believable. In the PCR hearing, the petitioner initially stated he and plea counsel did not talk about whether the plea court would be considering possible alcohol use related to the collision at sentencing, but that it was his understanding – as an attorney – that it could not be brought up and plea counsel did not say otherwise (App.120). On cross-examination, however, the petitioner claimed it was part of the plea bargain that no alcohol reference was to be made during his sentencing (App.128). In contrast, the petitioner's plea counsel

17

denied the plea negotiations included an agreement that alcohol not be mentioned to the plea court (App.133-34). The prosecutor agrees that there was no such agreement (Dayton Riddle, Deputy Solicitor, aff.).

The petitioner's guilty plea hearing was abbreviated, as sentencing was deferred to a later date. The State did not mention alcohol in its presentation of the case at the guilty plea. After accepting the plea, however, the court inquired as to whether there was any evidence alcohol was involved in the incident. The Deputy Solicitor responded there was some evidence alcohol was involved (App. 17). The sentencing court indicated it might request a pre-sentencing report from probation (App. 17-18). At no time from the date of the entry of the plea, when the court first inquired about alcohol use, until the date of sentencing, did the petitioner attempt to withdraw his guilty plea. A pre-sentence report was prepared, and plea counsel was given an opportunity to review the report at the onset of the sentencing hearing (App. 19 ). The sentencing transcript suggests, and plea counsel testified at the PCR hearing, that he reviewed the report with the petitioner before the sentencing hearing commenced (App. 19, 155). The pre-sentence report contained Trooper Day's assertion of the petitioner's alcohol consumption prior to the accident. At no time did the petitioner attempt to withdraw his guilty plea after reviewing the pre-sentence report.

During the sentencing hearing, the petitioner and plea counsel both challenged allegations that the petitioner had been drinking before the collision. Plea counsel stated the petitioner had been at his business overnight, that the business did not sell alcoholic beverages, and that on the way home the petitioner fell asleep and struck the victim (App. 47). The petitioner stated, "I'm sorry by what I did, but I wasn't drinking, Your Honor. But what happened, when I got home I did. I mean, I was just shaking like a leaf on a tree" (App. 51). The petitioner claimed he drank because of his nerves and the pain he was in from his hand injury (App. 51-52). He did not deny reporting to nursing staff that

18

he last had alcohol approximately 30 minutes before the collision, but rather said he simply did not know what he told her (App. 29, 52).

The plea and sentencing transcript does not reflect that the petitioner was surprised by the evidence presented by the state at sentencing.  In fact, the petitioner had been well aware the information would be presented since the court launched the inquiry approximately two months before his sentencing at the guilty plea.  Rather, the record shows that the petitioner pleaded guilty to avoid prosecution for felony DUI death, to have the charges dismissed against his son, and because he admittedly was guilty of leaving the scene of an accident resulting in death and obstruction of justice.

Further, as argued by the respondent, the petitioner would have been convicted of at least the charges to which he pleaded guilty, and the same information relayed to the court at the guilty plea would have been introduced during the trial or relayed to the court at sentencing after a trial.  The petitioner cannot show the result of the proceeding would have been different.

Based upon the foregoing, the petitioner has failed to show prejudice. Accordingly, the petitioner's first ground for relief fails.


### Ground Two

In this ground for relief, the petitioner contends that his plea counsel was ineffective for failing to insist on an evidentiary sentencing hearing so that he could cross-examine the unsworn statements made by government witnesses and present rebuttal witnesses.  The petitioner agrees that the PCR court rendered a decision on the merits of this claim, and thus the deferential standard of review applies (pet. habeas mem. 13).

The petitioner must show both deficient performance and prejudice, which has been described as a reasonable probability that his sentence "would be significantly less harsh," *see e.g. United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995), or a reasonable

probability that the result of the proceeding would be different.  *See Lambert v. U.S.,* 908

F.Supp. 356, 360 (W.D. Va 1995).

               In *State v. Franklin*, 226 S.E.2d 896 (S.C. 1976), the South Carolina Supreme

Court stated:

> If justice is to be done, a sentencing judge should know all the
> material facts. Fair administration of justice demands that the
> judge will not act on surmise or suspicion but will impose
> sentences with insight and understanding. Hence, the judge is
> required to listen and give serious consideration to any
> information material to punishment. If a defendant's record, as
> publicly disclosed, is incorrectly reported, defendant should
> have an opportunity to explain any discrepancy and inform the
> court concerning the alleged errors.
> \*\*\*
> A trial judge generally has wide discretion in determining what
> sentence to impose. It is also true that before making that
> determination, a judge may appropriately conduct an inquiry
> broad in scope, largely unlimited either as to the kind of
> information he may consider or the source from which it may
> come. *U.S. v. Magliano*, 336 F.2d 817 (4th Cir. 1964); *North
> Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d
> 656 (1969).

*Id.* at 897-98.  In a sentencing proceeding in South Carolina courts, evidentiary rules are

inapplicable, except in the penalty phase of capital trials as required by statute.  *State v.

Gulledge*, 487 S.E.2d 590, 594 (S.C. 1997) (citing *Williams v. New York*, 337 U.S. 241

(1949) (a sentencing judge need not follow the rules of evidence when determining the

appropriate punishment for a convicted defendant)); SCRE 1101(d)(3).  "However, the

admissibility of evidence is limited by constitutional provisions which require the evidence

to be relevant, reliable and trustworthy."  *Id.* (citing *United States v. Silverman*, 976 F.2d

1502 (6th Cir.1992) (hearsay evidence inadmissible at trial may be considered at

sentencing); *United States v. Holmes*, 961 F.2d 599 (6th Cir.); 24 C.J.S., Criminal Law

§ 1494 (1989) (hearsay is admissible if relevant and reliable); Thomas W. Hutchison, *et.

al*, Federal Sentencing and Practice at 649 (2d ed.1994) ("a court may consider any

relevant information without regard to its admissibility under the rules of evidence applicable

at trial, provided the information has sufficient indicia of reliability to support its probable accuracy")).  When sentencing a convicted defendant, a trial court exercises a wide discretion regarding the sources and types of evidence it may use to assist it in determining the kind and extent of punishment imposed.  Further, "it is proper for the trial judge, in open court, in the presence of the defendant, to inquire into any relevant facts in aggravation or mitigation of punishment."  *State v. Cantrell*, 158 S.E.2d 189, 191 (S.C. 1967).

        Clearly, the sentencing court had the right to inquire into not only the petitioner's actions on the day of the incident but also into his character for purposes of issuing a sentence.  The sentencing court asked whether alcohol was involved in the accident.  This was relevant to sentencing on the offenses of leaving the scene of an accident with death and obstruction of justice.  Whether the petitioner fled the scene because he fell asleep at the wheel and was afraid, or because he had been drinking or may have been intoxicated at the time of the incident is certainly a relevant inquiry by the sentencing court, because it goes to the seriousness of the offense, motive for leaving the scene, and attempted coverup, and the character and credibility of the petitioner.  This evidence was reliable and trustworthy because it was related to the court by not only the prosecutor but also the investigating officer. The evidence was also reliable and trustworthy because it came from several different sources.  Eyewitnesses reported the petitioner's erratic driving and gave statements to the police.  An accident reconstruction expert determined the petitioner's speed at the time of the accident based on forensic evidence. A nurse reported the petitioner's statement that he last drank alcohol 30 minutes before the accident.  A doctor reported petitioner's intoxicated state just a few hours after the accident (Highway Patrol records).  Furthermore, information regarding alcohol use on the day of the accident was relevant, reliable, and trustworthy because it was contained within the pre-sentence report requested by the sentencing court and prepared by the South Carolina Department of Probation and Parole (pre-sentence report).

21

With regard to the information relayed to the court regarding the loss of petitioner's license to practice law, the evidence was relevant, reliable, and trustworthy. It was relevant because it was evidence of his character. It was reliable and trustworthy because it was related to the court by the Deputy Solicitor, who obtained the information directly from the Georgia State Bar. The records reflect the petitioner voluntarily surrendered his license to practice law and made several written admissions of fraudulent or deceitful conduct. He admitted he represented a signature on a release as his client's, when he knew in fact the signature was not his client's. The petitioner admitted he represented that his client's signature on a check was genuine, when he knew it was not, and he admitted he wrongfully converted his client's funds (Georgia Bar Records). Consideration of the petitioner's character by the sentencing court was relevant and permissible.

The petitioner and his counsel were given an opportunity to respond to each of these allegations and did respond to and explain these allegations. The PCR court concluded this was legally significant, as it should have (App. 175). In *State v. Franklin*, 226 S.E.2d 896 (S.C. 1976), the South Carolina Supreme Court rejected a claim by a defendant that a trial court should not have considered his probation report, which included charges for which the defendant had not been tried and charged infractions of prison rules. The defendant in that case alleged the prison rules violations had been dropped and also explained a prior armed robbery conviction. *Id.* at 897. The South Carolina Supreme Court affirmed. The court found it significant that the trial court gave the defendant an opportunity to respond to the allegations at sentencing:

> It must be noted that [Franklin] was given an opportunity to explain each of the alleged incidents, which were not denied by him, but rather explained.
>
> Under these circumstances, we find that the facts which were divulged to the Court were fully disclosed to [Franklin] in such

22

a manner that he had an opportunity to explain any misapprehension the Court may have had.

*Id*. at 898.

Likewise, in the present case, the petitioner and his counsel were given the opportunity to respond to any allegations made by the State, and they did so.  The petitioner and his counsel denied that he was drinking before the accident but claimed that he instead drank after the accident (App. 47, 52).  Importantly, the sentencing court did not find that petitioner was intoxicated at the time of the incident, only that he may have had something to drink before the accident, which is not illegal (App. 61, 175-76).  Instead, the court focused on the petitioner's actions while driving, his prior record, and character.  The petitioner alleged the reason he left the scene was because of fear of law enforcement. It is clear the sentencing court considered the petitioner's reasons for leaving the scene and found them to not be credible (Tr. 63) (the petitioner's reasons for leaving "don't wash with me").

The petitioner alleges that his plea counsel was ineffective in failing to present witnesses to rebut the allegations the collision may have been alcohol-related.  At the PCR hearing, the petitioner specifically stated that had he known alcohol would be discussed at the hearing, he could have had his son at the sentencing hearing to testify that he was drinking on the way to the hospital (App. 122).  However, other than his own testimony, the petitioner offered no witnesses or other evidence at his PCR hearing that he alleges plea counsel should have offered at his sentencing hearing.  *See Dempsey v. State*, 610 S.E.2d 812, 814 (S.C. 2005) ("A PCR applicant cannot show that he was prejudiced by counsel's failure to call a favorable witness to testify at trial if that witness does not later testify at the PCR hearing or otherwise offer testimony within the rules of evidence.").

The petitioner cannot show prejudice flowed from consideration of this evidence by the sentencing court.  As the PCR court's decision was not contrary to and did

23

not involve an unreasonable application of Supreme Court precedent, and as the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this claim fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 15) be granted.

s/William M. Catoe
United States Magistrate Judge

July 16, 2008

Greenville, South Carolina